**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEVIN LUCAS,

      Petitioner,                        Civil No. 2:07-CV-10895
                                             HONORABLE GEORGE CARAM STEEH
v.                                    UNITED STATES DISTRICT JUDGE

KENNETH T. McKEE,

      Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Kevin Lucas, ("petitioner"), presently confined at the Saginaw Correctional Facility in Freeland, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for assault with intent to commit murder, M.C.L.A. 750.83; interfering with a crime report, M.C.L.A. 750.483a(2)(b); and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, petitioner's application for writ of habeas corpus is **DENIED.**

### I. Background

This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

Defendant was convicted of shooting his estranged wife in her home.

The complainant had a personal protection order ("PPO") against defendant. The parties' son, KL, who was fifteen years old at the time of the incident, resided with the complainant. On October 18, 2003, defendant let himself into the complainant's house. KL indicated that after he told defendant that the complainant was sleeping, defendant directed him to wake her. Defendant then went in the basement where he had a gun cabinet to which he had the only key. The complainant testified that shortly after KL told her "daddy's in the house," defendant came to her bedroom doorway and "angrily" stated that he "didn't want no sh* * out of [her]."

The complainant testified that after getting dressed and while defendant was in the basement, she went to the kitchen and started washing the dishes and making coffee. The complainant explained that the stairs from the basement lead directly to the kitchen. According to the complainant, defendant came up from the basement, "already angry, hands in his pocket," and asked her a series of questions, including, "Why are you doing this sh* * to me?" and, "Why you keep getting these PPO's on me?" The complainant did not answer. Defendant then told the complainant that he needed his social security card and birth certificate. She told him that she did not have them. At this time, the complainant was facing the sink with her back to defendant.

The complainant testified that out of the side of her eye, she saw defendant's hands come out of his pockets and come together. She heard a loud pop and felt something in her stomach and abdomen. The complainant told defendant that he shot her and began "begging him" for help and water. Defendant allegedly responded that she "wasn't getting nothing." The complainant indicated that defendant knelt in front of her, put a gun against her forehead and asked, "Why shouldn't [he] kill [her]," and blamed her for making him "do this." The complainant testified that she could clearly see the gun when it was against her head.

KL testified that after hearing the gunshot, he ran into the kitchen and saw the complainant on the floor, and defendant holding a gun. According to KL, defendant threatened, "don't nobody move or [he'll] shoot [the complainant] again." KL also heard defendant say "something about why should [he] let [her] live ..." The complainant testified that, at that point, KL pleaded with defendant saying "don't, don't daddy." When defendant again asked why he should let the

2

complainant live, KL replied that he loved and needed her. Both the complainant and KL testified that the complainant repeatedly exclaimed that she was dying. KL indicated that defendant did not help the complainant and would not allow him to call for assistance.

KL testified that defendant then sent him to the basement to put his guns and papers back in the gun cabinet and threatened to kill the complainant if he refused. Defendant accompanied KL, leaving the complainant in the kitchen. According to KL, defendant then asked the whereabouts of the complainant's purse, and after he found it, he rummaged through it and took the complainant's keys and money. Before leaving in the complainant's car, defendant directed the complainant and KL to tell the police that a stranger came to the door and shot the complainant. Defendant warned that if they disclosed his identity to anyone, he would return to kill the complainant and, if he was in prison, he would send someone else to do it. After defendant left, KL called 911.

According to the responding police officers, neither KL nor the complainant initially disclosed the identity of the shooter. After the complainant was taken to the hospital, KL revealed to the police that defendant had shot the complainant. KL testified that he did not initially disclose defendant's identity because he was afraid that defendant was "going to kill [his] mom." The complainant testified that defendant shot her in the back, and, as a result of the shooting, she was in a coma for seven days, in the hospital for thirty-two days, and sustained injuries to her stomach, spleen, liver, lung, diaphragm, and colon.

Defendant testified that the shooting was accidental. He indicated that he took a handgun from the basement, and as he was putting it in a plastic bag on the landing, it discharged and struck the complainant. He indicated that he panicked and initially told the complainant and KL not to call emergency and to claim that a stranger shot the complainant. He denied threatening to kill the complainant or taking money from her purse, but admitted taking her keys. He claimed that before leaving, he told KL to call emergency.

*People v. Lucas,* No. 254521, * 1-2 (Mich.Ct. App. June 23, 2005).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 474 Mich. 946;

706 N.W. 2d 200 (2005).  Petitioner now seeks the issuance of a writ of habeas

corpus on the following grounds:

> I. The district court abused its discretion by binding petitioner over as charged because the preliminary examination evidence was insufficient to establish probable cause to believe that he perpetrated the offense.

> A. Defense counsel denied petitioner the effective assistance of counsel by not objecting or filing a motion to quash.

> II. Petitioner was deprived a fair and impartial trial due to prosecutorial misconduct, and the damage could not be reversed with a curative instruction.

> III. Petitioner is entitled to a writ of habeas corpus because he received constitutionally ineffective assistance from his trial counsel who failed to impeach the complainant with prior inconsistent testimony.

> IV. The trial court violated petitioner's due process rights at sentencing by departing above the statutory sentencing guidelines range where there were no substantial and compelling reasons to do so, and where the prosecutor did not specifically charge him with facts supporting the departure and he did not plead guilty to those facts, violating *Blakely v. Washington.*

## II.  Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas
cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

### A.  Claim # 1.  The improper bindover claim.

Petitioner first contends that the state district court abused its discretion in binding him over for trial because the evidence presented at the preliminary examination was insufficient to establish that he was the perpetrator of the offense. [1]

---

[1]   As part of his first claim, petitioner contends in the alternative that his defense counsel was ineffective for failing to object to the bindover or for failing to file a motion to quash the information.  For the purpose of judicial clarity, the Court will address this portion of petitioner's first claim when addressing petitioner's other ineffective assistance of counsel claim, *infra.*

Petitioner has failed to state a claim upon which habeas relief can be granted.  A prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).  There is no federal constitutional right to a preliminary examination. *United States v. Mulligan*, 520 F. 2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar*, 342 F. 2d 789, 790 (6th Cir. 1965).  Petitioner's claim that there was insufficient evidence presented at his preliminary examination to bind him over for trial thus raises only a matter of state law and procedure that cannot form a basis for federal habeas relief. *See Dorchy v. Jones,* 320 F. Supp. 2d 564, 578-79 (E.D.Mich. 2004); *David v. Lavinge,* 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002).  In addition, a jury's guilty verdict renders harmless any error in the charging decision. *United States v. Mechanik,* 475 U.S. 66, 73 (1986).  Any insufficiency of evidence at petitioner's preliminary examination would be harmless error in light of petitioner's subsequent conviction. *See United States ex. rel. John v. People of the State of N.Y.,* 868 F. Supp. 74, 75 (S.D.N.Y. 1994).  Petitioner is not entitled to habeas relief on his first claim.

**B.  Claim # 2.  The prosecutorial misconduct claim.**

Petitioner next contends that the prosecutor committed various acts of prosecutorial misconduct.  Respondent contends that petitioner's prosecutorial misconduct claims are procedurally defaulted because petitioner failed to preserve the issues by objecting at trial and as a result, the Michigan Court of

Appeals reviewed these claims for plain error only. *See Lucas,* Slip. Op. at * 2.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved these prosecutorial misconduct claims. The fact that the Michigan Court of Appeals engaged in plain error

7

review of petitioner's claims does not constitute a waiver of the state procedural

default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this

Court should view the Michigan Court of Appeals' review of petitioner's claim for

plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d

239, 244 (6th Cir. 2001). Petitioner's claims are procedurally defaulted.

In the present case, petitioner has failed to allege any reasons to excuse

his procedural default. Although ineffective assistance of counsel may be cause

to excuse a procedural default, that claim itself must be exhausted in the state

courts. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Although petitioner

raised two ineffective assistance of counsel claims in the state courts involving

his counsel's failure to object to the allegedly improper bindover and counsel's

failure to adequately cross-examine the victim, petitioner did not raise a claim in

the state courts regarding counsel's failure to object to the prosecutorial

misconduct. Because petitioner never raised in the Michigan courts a specific

claim about trial counsel's failure to object to these two instances of

prosecutorial misconduct, any alleged ineffectiveness of counsel cannot

constitute cause to excuse petitioner's default with respect to his prosecutorial

misconduct claims. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich.

2006). Because petitioner has not demonstrated any cause for his procedural

default, it is unnecessary to reach the prejudice issue regarding these

prosecutorial misconduct claims. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider these prosecutorial misconduct claims as a ground for a writ of habeas corpus in spite of the procedural default. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's prosecutorial misconduct claims on the merits. *See Harris v. Stegall*, 157 F. Supp. 2d 743, 751 (E.D. Mich. 2001). Petitioner's prosecutorial misconduct claims are procedurally barred and he is therefore not entitled to relief on these claims.

**C. Claims # 1A and # 3. The ineffective assistance of counsel claims.**

Petitioner next contends that he was deprived of the effective assistance of counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first claims that trial counsel was ineffective for failing to object

9

to the bindover and/or failing to file a motion to quash the information, because

insufficient evidence had been presented at his preliminary examination to

establish his identity as the shooter.

Petitioner's claim is without merit. First, although the victim did not

explicitly name petitioner as her assailant at the preliminary examination, she

identified petitioner, Kevin Lucas, Sr., as her husband and further indicated that

he was not living at her home at the time of the shooting. (Preliminary

Examination Tr., pp. 6-7). Although the victim only used pronouns like "he" and

"him" to describe what petitioner did during the actual shooting, the victim

testified that right after being shot, her son entered the kitchen, where the

shooting took place. The prosecutor asked the following question:

> Q. When he [the son] walks in, do you recall Kevin Sr. saying
> something?
>
> A. No.
> (*Id.* at p. 15).

Later, on cross-examination, the victim was asked to describe the gun that

her husband used during the shooting. (*Id.* at p. 22). Defense counsel later

asked the victim if she knew what her husband and son were doing in the

basement [prior to the shooting]. (*Id.* at p. 23).

When viewed in its entirety, the victim's testimony at the preliminary

examination implicitly identified petitioner as being the shooter, even if she did

not specifically testify by name that petitioner was the actual shooter.

10

Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support a bindover decision. *See People v. Terry*, 224 Mich. App 447, 451; 569 N.W. 2d 641 (1997). Because it was reasonable to infer from the entire context of her testimony that the victim was referring to petitioner as being her assailant, the district court did not err in binding petitioner over for trial.

Moreover, as respondent points out in her answer, had counsel filed a successful motion to quash, M.C.R. 6.110(F) would have permitted the prosecutor to re-file the charges and seek a second preliminary examination, particularly if the prosecutor sought to present additional, noncumulative evidence at a second preliminary examination. *See People v. Robbins,* 223 Mich. App. 355, 362; 566 N.W.2d 49 (1997). By his own admission (See Petition, p. 13), petitioner's son had been subpoened for the first preliminary examination, but had not been called as a witness. Petitioner acknowledges that his son could have been called as a witness to testify to his identification as the shooter. Therefore, had petitioner's counsel filed a successful motion to quash, under Michigan law, the charges could have simply been re-filed, in which case both the victim and petitioner's son could have positively identified petitioner as the shooter at a second preliminary examination.

Because petitioner has not established that he was prejudiced by counsel's failure to object to his bindover, his ineffective assistance of counsel claim fails. *See Dell v. Straub*, 194 F. Supp. 2d 629, 649 (E.D. Mich. 2002).

Petitioner next contends that counsel was ineffective for failing to impeach

the victim with several inconsistent statements.  Petitioner contends that trial

counsel was ineffective for failing to cross-examine the victim on the basis of

perceived discrepancies between her preliminary examination testimony and her

trial testimony.  The alleged inconsistencies were: (1) whether petitioner was

standing at the victim's bedroom door or not when her son woke the victim to tell

her that petitioner had entered her house; (2) whether the victim was washing

dishes and making coffee or just washing dishes just before petitioner shot her in

the back, and (3) and whether after being shot, the victim asked her son to call

911 or pleaded with petitioner for her life.

"Courts generally entrust cross-examination techniques, like other matters

of trial strategy, to the professional discretion of counsel." *Dell,* 194 F. Supp. 2d

at 651.  "Impeachment strategy is a matter of trial tactics, and tactical decisions

are not ineffective assistance of counsel simply because in retrospect better

tactics may have been available." *Id.*

Petitioner's trial counsel, by petitioner's own admission (See Petition, p.

26), questioned the victim extensively about a number of issues, including the

fact that she initially failed to identify petitioner as being her assailant to the

police. (Tr. 2/26/2004, pp. 13-24).   Counsel's decision not to challenge the

victim over the minor inconsistencies between her preliminary examination

testimony and her trial testimony was not ineffective assistance of counsel. *See*

12

*Campbell v. United States,* 364 F. 3d 727, 735 (6th Cir. 2004). In addition,

counsel's failure to impeach the victim about these minor discrepancies did not

undermine confidence in outcome of the case, since a variety of other

impeachment evidence was admitted in this case. *See Wolfe,* 412 F. Supp. 2d at

676-77. Petitioner is thus not entitled to habeas relief on his ineffective

assistance of counsel claims.

**D. Claim # 4. The sentencing claim.**

Petitioner lastly claims that the trial court erred in departing above the

sentencing guidelines range of 135 to 225 months for the assault with intent to

commit murder conviction by sentencing him to thirty to sixty years in prison.

This Court initially notes that petitioner's sentence was within the statutory

limit of the offense of assault with intent to commit murder. A sentence imposed

within the statutory limits is not generally subject to habeas review. *Townsend v.*

*Burke,* 334 U.S. 736, 741 (1948); *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744

(E.D. Mich. 2002). A sentence within the statutory maximum set by statute does

not normally constitute cruel and unusual punishment. *Austin v. Jackson,* 213 F.

3d 298, 302 (6th Cir. 2000); *Friday,* 200 F. Supp. 2d at 744. As a general rule,

federal habeas review of a state court sentence ends once the court makes a

determination that the sentence is within the limitation set by statute. *Friday,* 200

F. Supp. 2d at 744.

Petitioner has no state-created interest in having the Michigan Sentencing

Guidelines applied rigidly in determining his sentence. *See Shanks v.*

*Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005). Petitioner's claim

that the state trial court improperly departed above the sentencing guidelines

range would also not entitle him to habeas relief. *Welch v. Burke*, 49 F. Supp. 2d

992, 1009 (E.D. Mich. 1999); *See also Drew v. Tessmer,* 195 F. Supp. 2d 887,

889-90 (E.D. Mich. 2001).

Petitioner further contends that in departing above the sentencing

guidelines range, the trial court violated the Supreme Court's holding in *Blakely*

*v. Washington,* 542 U.S. 296 (2004)*,* where the Supreme Court held that other

than the fact of a defendant's prior conviction, any fact that increases or

enhances a penalty for the crime beyond the prescribed statutory maximum for

the offense must be submitted to the jury and proven beyond a reasonable

doubt.

The problem with petitioner's reliance on *Blakely* is that the case in

*Blakely* involved a trial court's departure from Washington's determinate

sentencing scheme. Michigan, by contrast, has an indeterminate sentencing

system in which the defendant is given a sentence with a minimum and a

maximum sentence. The decision in *Blakely* has no application to petitioner's

sentence. Indeterminate sentencing schemes, unlike determinate sentencing

schemes, do not infringe on the province of the jury. *See Blakely*, 542 U.S. at

304-05, 308-09. Because *Blakely* does not apply to indeterminate sentencing

schemes like the one used in Michigan, the trial court's departure above

petitioner's sentencing guidelines range did not violate petitioner's Sixth

Amendment rights. *See Tironi v. Birkett*, 2007 WL 3226198, * 1-2 (6ᵗʰ Cir.

October 26, 2007). *[2]*

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will

also deny a certificate of appealability to petitioner. In order to obtain a

certificate of appealability, a prisoner must make a substantial showing of the

denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this

denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different

manner, or that the issues presented were adequate to deserve encouragement

to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a

district court rejects a habeas petitioner's constitutional claims on the merits, the

---

[2]  Indeed, every judge in the Eastern District of Michigan that has considered the issue has also rejected *Blakely* challenges to the scoring of the Michigan Sentencing Guidelines on this basis. See *Delavern v. Harry,* No. 2007 WL 2652603, * 4 (E.D. Mich. September 7, 2007)(Rosen, J.); *Brown v. Bell,* No. 2007 WL 2516933, * 2 (E.D. Mich. August 31, 2007)(Cohn, J.); *Anderson v. Lafler,* No. 2007 WL 2480549, * 4 (E.D. Mich. August 29, 2007)(Borman, J.); *Couch v. Prelesnik,* No. 2007 WL 2413090, * 6 (E.D. Mich. August 21, 2007)(Friedman, J.); *Morgan v. Birkett,* 2007 WL 2318751, * 2 (E.D. Mich. August 9, 2007)(Hood, J.); *Moffett v. Davis,* No. 2007 WL 2225875, * 4 (E.D. Mich. August 1, 2007)(Roberts, J.); *Logan v. Booker,* No. 2007 WL 2225887, * 6 (E.D. Mich. August 1, 2007)(Duggan, J.); *Djoumessi v. Wolfenbarger,* No. 2007 WL 2021837, * 17-18 (E.D. Mich. July 12, 2007)(Tarnow, J.); *Carattoni v. Stovall,* No. 2007 WL 1976459, * 3-4 (E.D. Mich. July 3, 2007)(Steeh, J.)*;Jackson v. Curtin,* No. 2007 WL 1675296, * 3 (E.D. Mich. June 11, 2007)(Edmunds, J.)*;Davis v. Lafler,* No. 2007 WL 1582221, * 13-14 (E.D. Mich. May 31, 2007)(O'Meara, J.); *Coffel v. Stovall,* No. 2007 WL 1452918, * 3-4 (E.D.Mich. May 15, 2007)(Ludington, J.)*;.Conner v. Romanowski,* No. 2007 WL 1345066, * 4-6 (E.D. Mich. May 4, 2007)(Battani, J.); *Hall v. Lafler,* No. 2007 WL 1017036, * 5 (E.D.Mich. April 2, 2007)(Zatkoff, J.); *Bell v. Booker, No.* 2007 WL 869169, * 2-3 (E.D.Mich. March 22, 2007)(Taylor,J.)

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of petitioner's claims to be debatable or that they should receive encouragement to proceed further. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: November 26, 2007

<u>S/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 26, 2007, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk